# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1056 | **DATE** | 6/28/2000 |
| **CASE TITLE** | JOEL M. STENDER vs. PROVIDENT LIFE ,etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff Stender's motion for summary judgment is granted and defendant Provident's motion to strike is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |

number of notices

JUN 29 2000

date docketed

docketing deputy initials

**Document Number**

19

| TBK | courtroom deputy's initials | | |
|---|---|---|---|

Date/time received in central Clerk's Office

date mailed notice

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOEL M. STENDER )
)
)
)
)
Plaintiff, )
)
) No. 98 C 1056
) Judge Ronald A. Guzman
PROVIDENT LIFE AND ACCIDENT )
INSURANCE COMPANY )
)
)
)
)
Defendant. )
)

DOCKETED
JUN 29 2000

## MEMORANDUM OPINION AND ORDER

Pending is plaintiff Joel M. Stender's motion for summary judgment pursuant to Fed. R.Civ. Proc. 56. For the reasons set forth below this motion is granted.

## BACKGROUND FACTS

In June of 1980, Provident issued occupational disability insurance[1] Policy No. 6PC-425809 ("the 330 policy") to Plaintiff Joel M. Stender( "Stender'). On October 14, 1982, Stender applied for an additional occupational disability policy with Provident. On January 14, 1983, Provident issued the additional policy, No. 6-344-546778 ("the 334 policy"). To confirm that

---

[1]There are two basic types of disability policies, the general disability policy and the occupational disability policy. A general disability, or non-occupational, policy defines disability in terms of the inability of the insured to engage in any gainful occupation or like phrase. 10 *Couch on Insurance 3d* § 146:3. On the other hand, an "occupational disability" policy requires only that the insured by unable to perform the duties of his or her particular occupation in order to be "totally disabled." *Id.*

1

the occupational disability insurance he was purchasing would indeed cover him in the event he was no longer able to trade on the floor Stender wrote Provident a letter, dated March 14, 1983, which set forth his understanding of the insurance contract's provisions.(Exhibit 22). In that letter, Stender stated that his occupation was that of a Commodities Scalper. He explained "that this meant that he stood in a trading pit and bought and sold commodities for his own account." (Exhibit 22). In this letter, Stender also informed Provident that he understood that "if for any medically related reasons such as deterioration of [his] hearing or voice capacity which resulted in [his] doctor's advice to eliminate [his] Pit Scalping... these policies would pay the full benefit amount for which [he] was paying [premiums]". (Exhibit 22). At the same time, Stender informed Provident that if such a disability occurred, even if he could still trade commodities out of the pit, such outside-the-pit trading was "entirely different from what I do for the purpose of this disability insurance, it must be considered a different occupation." (Exhibit 22). Stender requested that this letter be "stapled to the policy" as a precondition to accepting his check and was addressed to Provident's agent Robert Rashkow. (Exhibit 22).

Provident's responses to Stender's letters were contained in two letters dated April 15, 1983 (Exhibit 20) and June 10, 1983 (Exhibit 19) respectively. Provident's letter of April 15, 1983 provided in part "[i]n the event of suffering total loss of speech, hearing, sight or use of two limbs, regardless of your ability to engage in any occupation, you will be paid your monthly benefits for lifetime. In the event of a residual disability, where you are unable to perform one or more of your usual important business duties, or cannot devote as much time as normal, and suffer an earnings loss of 25% or more, we would pay a proportionate benefit. This applies only if you return to your normal occupation." Provident's letter of June 10, 1983 acknowledged

Stender's occupation to be that of Commodity Scalper and stated that "the policy does not dictate how you must perform the duties of your occupation. The relevant question in determining disability is whether or not you can perform the duties of your occupation and advised Stender that his letter of March 14, 1983 "[wa]s being placed in Provident's file but that said letter does not have any effect on Stender's disability policy." (Exhibit 19).

Both occupational disability policies were amended several times after the date of their issuance. As amended, as of 1993, the policies entitled Stender to a payment of $9,400.00 per month for at least ten (10) years should he become totally disabled as is defined under the policies. The definition section of the 330 policy issued to Stender provided as follows: (a) Until the date you attain age 55, or until the date indemnity for total disability has been paid during a period of disability under this policy for 5 years, whichever is later. "Total Disability" means your inability to perform the duties of your occupation. The 330 policy does not define the term "occupation."

The definition section of the 334 policy provided as follows: "total disability before age 55, or before benefits have been paid for ten years for a period of disability, whichever is later, means that due to injury or sickness, (1) you are not able to perform the substantial and material duties of your occupation and (2) you are under the care and attendance of a physician." The 334 policy defines the term "your occupation" to mean "the occupation (or occupations if more than one) in which you are regularly engaged at the time you become disabled." The 334 Policy provides, in pertinent part, Residual Disability means that due to sickness the insured is unable to perform one or more of your important daily business duties and your Loss of Monthly Income is at least 25% of your Prior Monthly Income. The Residual Disability provision also provided that

nothing in this residual disability provision limits the policy definition of total disability.

For more than a decade after obtaining his first occupational disability policy, Stender paid his premiums and worked successfully as a Commodity Pit Scalper. A Commodities Pit Scalper is someone who buys and sells commodities from inside a trading pit, a closely gathered and noisy environment. The Pit Scalper trades commodities by shouting buy and sell prices until a striking price is reached as to a given commodities contract. The Pit Scalper attempts to capture the tiny increments of value by getting the edge on the trade as obtained by making the trade price either a little above or below where the market had previously traded.

In 1993, Stender's career as a Commodities Pit Scalper came to an end. Stender could no longer hear well enough to trade in the pits and his voice had deteriorated to the point that he could no longer be heard on the trading floor. Based on these disabling conditions, on July 1, 1993, Stender filed an insurance statement for a claim of total disability with Provident under both policies. Stender then started to trade commodities from his home. As early as December of 1993, Stender informed Provident that he was "working on becoming an off the floor trader." Since becoming disabled and being forced to trade off the floor, Mr. Stender never made a yearly profit on his off the floor trading. Although Stender has the right to use the trading pit at the CMOE, it is undisputed that he did not have the ability to trade in the pit because he could neither hear or speak well enough to do so. Stender has been under the care of a physician as to his injuries.

Disability payments were made by Provident under both policies for four years. However, in November of 1997 Provident informed Stender that it would no longer pay his full disability insurance claim, even though Provident admits that Stender still has a disabling hearing loss.

4

In January of 1994 Provident Field Agent, Warren Diegel, met with Stender and Stender explained his new career to Diegel. In 1995, however, Stender's claim file was assigned to a new adjuster, Clayton Smith. Mr. Smith concluded that Provident should revoke Mr. Stender's right to full disability benefits.

On October 20, 1995, Provident in response to a letter from Stender's lawyer, agreed to continue paying benefits. In November of 1997, Provident again contested Stender's rights to benefits and stopped paying on such. Stender brought suit against Provident for wrongfully denying his claim for benefits under the policy, arguing breach of contract, estoppel and waiver. Stender now moves for summary judgment pursuant to Fed. R. Civ. Proc. 56.

## DISCUSSION

Under Fed. R. Civ. P. 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Thus, Rule 56(c) requires the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden at trail. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). A party may not rest upon pleadings to oppose a motion for summary judgment and must set forth specific facts showing that there is a genuine issue for trail. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

Stender contends that we should grant his motion for summary judgment because he is totally disabled from his occupation as Commodity Pit Scalper. Stender argues that the only

5

issue to be resolved in this litigation is whether Stender's post-disability occupation is different from he pre-disability occupation. Provident raises three arguments in opposition to Stender's motion for summary judgment. First, Provident claims there is a genuine issue of material fact as to Stender's occupation at the time he became disabled. Provident argues that Stender was, at the time of his alleged total disability, essentially engaged in the occupation of an investor/trader of commodities futures. Second, Provident argues that an issue of fact exists as to whether Stender satisfies the requirements of total disability. Finally, Provident argues that Stender was engaged in dual occupations, the second one being the operation of a laundry business Newco. Apparently, sometime in 1985, Stender started to maintain the books and records and do some administration work for a company Newco Laundries, Inc. This business puts washer and dryers in rental buildings owned by Stender's family and it is undisputed that it has produced income for Stender.

## NO ISSUE OF FACT REMAINS THAT STENDER IS DISABLED FROM HIS OCCUPATION OF PIT SCALPING

Stender's primary argument is that no genuine issue remains as to the fact that his pre-disability occupation of Commodity Pit Scalper is different from his current occupation of off the floor Positions Trader. Stender argues that the term "occupation," as defined in the 1983 policy, is ambiguous and the ambiguity between the broad definition put forth by Provident, and the narrow definition claimed by Stender, must be resolved in his favor. Stender further argues that he is entitled to full disability benefits because there has been a substantial change in the terms and conditions of his employment.

A threshold issue to be resolved in this case is whether the definition of occupation as set

forth in the 334 policy is ambiguous. It is undisputed that the 330 policy does not contain such a definition. Some disability policies gear recovery to the insured's inability to perform any of the duties of his or her occupation, business, or profession. Such policies, commonly called "occupational disability" insurance, are far less restrictive than the general disability variety. *Bell v. Continental Assur. Co.,* 123 Ill. App. 2d 274, 260 N.E. 2d 114 (1st Dist.1970). Provident does not contest that the 334 policy is an occupational disability policy.

The 334 policy defines "your occupation" [as] the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled." Provident submits that term "occupation' is unambiguous and must be interpreted to mean the occupation or occupations that Mr. Stender held at the time of his disability. Stender, on the other hand, argues that the definition of occupation is ambiguous and the narrower definition as defined by the functions of his occupation must be resolved in his favor.

To determine the meaning of a specific term, the court must first decide whether the term is ambiguous. In interpreting insurance policies, as with other contracts, policy provisions are ambiguous only if it is subject to more than one reasonable interpretation, *Indiana Ins. Co. v. Liaskos,* 297 Ill. App. 3d 569, 574, 697 N.E. 2d 398, 402, 231 Ill. Dec. 844 (1st Dist.1998); and a term is not ambiguous just because it is not defined in the policy. *Id.* If the term is unambiguous, the court should employ the plain, ordinary, and popular meaning of the term. See *Employers Ins. of Wausau v. James McHugh Const. Co.,* 144 F. 3d 1097, 1104 (7th Cir. 1998); *Indiana Ins. Co.,* 297 Ill. App. 3d 569, 574, 697 N.E. 2d at 401-02, 231 Ill. Dec. 844 (1st Dist. 1998); and *International Ins. Co. v. Peabody Intern. Corp.,* 747 F. Supp. 470, 480 (N.D. Ill. 1990). If the term is ambiguous, the court must construe the term against the insurer and in favor

of the insured. *See Employers Ins. of Wausau,* 144 F. 3d at 1104; *Indiana Ins. Co.,* 297 Ill. App. 3d at 574, 697 N.E. 2d at 402; *Lang v. Monarch Life Ins. Co.,* 75 Ill. App. 3d 938, 942, 394 N.E. 2d 751, 753, 31 Ill. Dec. 549 (3d Dist. 1979); and *Bell v. Continental Assurance Co.,* 123 Ill. App. 2d 274, 277, 260 N.E. 2d 114, 116, (1st Dist.1970). We find the definition of occupation to be unambiguous. The only inference that one can draw from the policy's definition is that Stender's occupation or occupations is that which Stender was regularly engaged in at the time he became disabled. Otherwise, Stender could claim coverage if he or she became disabled from performing any of several occupations serially undertaken over the course of several years. *See Francois v. Mutual Life Ins. Co. of New York,* 405 So. 2d 1292, 1294 (La. App. 1981)(holding that the relevant occupation was only that which the insured was engaged in at the time the disabling condition prevented continued employment). Rather, what Provident disputes is how this definition should be applied to Stender's situation.

In *Bell v. Continental Assurance Co.,* 260 N.E. 2d at 116 (1st Dist. 1970) and *Rahman v. Paul Revere Life Insurance Co.,* 684 F. Supp.at 195 (N.D. Ill. 1988) the issue to be resolved was which of two occupations, a specialty or general field, was the insured performing at the time of his injury or disability. In *Bell,* 260 N.E. 2d at 116, the occupation of the insured as listed in his application governed. Bell in his application for the insurance policy, listed his occupation as "planer operator." The insurance agent could not find "planer operator" in his rate book and, therefore, told the insured that his occupation would be "machinist" for rate purposes but that "planer operator" would describe his duties. The insured later became incapable of working as a "planer operator" and began working as a bench hand, an occupation that also fits under the generic description of "machinist." After the insurance company denied the insurance benefits

8

because he was not disabled from his regular occupation of a machinist, the court examined whether to engage in his regular occupation meant to perform (1) familiar duties, or (2) duties specifically listed in the application for insurance. The Illinois court found that the policy did not clearly answer the questions and, therefore, the ambiguity should be resolved in favor of the insured. Thus, the court declared the insured disabled from the occupation listed in the application, planer operator, even though he could still work as a bench hand.

In *Rahman*, 684 F. Supp. at 195, the insured worked as a doctor specializing in emergency cardiology. However, after an injury, he did not possess the mobility for emergency cardiology, although he could still work in general cardiology. The district court stated that Illinois law requires ambiguous provisions to be resolved against the insurer, and because the term "regular" occupation was ambiguous here, the doctor's regular occupation at the time of his injury was his specialty of emergency cardiology, not the general field of cardiology.

The assumption made by these two cases is compatible with the view taken by other courts in the United States. Other courts interpreting the term "occupation" have held the term to be unambiguous and that disability benefits should be determined from the occupation of the insured at the time of injury or sickness.[2] Because, as the above discussion demonstrates, the appropriate focus in on the occupation in which Mr. Stender was engaged at the time of his disability, we examine the nature of the substantial and material duties that Stender actually

---

[2]*Metropolitan Life Ins. Co. v. Foster*, 67 F. 2d 264, 265-66 (5th Cir. 1993)(concluding that "occupation" in the policy refers to the insured's usual occupation at the time of disability); *Hopkins v. North Am. Co. for Life and Health Ins.*, 594 S.W. 2d 310, 315 (Mo. Ct. App. 1980)(agreeing that "regular occupation" generally means insured's occupation at the time the disability occurs); and *Francois v. Mutual Life Insurance Co.*, 405 So. 2d 1292, 1295 (La. Ct. App. 1981).

performed before his injury and inquire whether after this injury he can continue to perform them. *Chalmers v. Metropolitan Life Ins. Co.,* 86 Mich. App. 25, 272 N.W. 2d 188 (1978).

In assessing the insured's rights in these situations, the Seventh Circuit noted the broad purpose of occupational disability policies:

> The purpose of the policy is to protect the individual whose economic expectations and commitments are disrupted by a change in occupational status due to injury or sickness. We can envision two broad categories of disability that might require a determination of total disability under the General American policy. The policy language could be interpreted reasonably to cover both qualitative and quantitative reductions in one's performance as a result of an injury or sickness.

149 F. 3d at 588.

Here, the Seventh Circuit addressed a disability policy provision which is similar to the total disability definition in the 334 Policy; *to wit*, the provision considered in *McFarland* provides that the insured is totally disabled if he is "unable to perform the material and substantial duties of (his) regular occupation." The Court considered whether the phrase "material and substantial duties of his regular occupation" was an ambiguous term in the disability policy. The Court ascertained the intent of the parties by construing the policy as a whole while giving due regard to the risk undertaken, the subject matter that was insured and the purposes of the entire contract, and held that the terms "the material and substantial duties" were not ambiguous terms and should, therefore, be given their plain and ordinary meaning. The Court stated that the import of "material and substantial duties" was clear and construing such term/phrase as unambiguous was consistent with the intent that the disability policy protects the insured from disabilities that prevent his continuing in his regular occupation .*Id.*

The Seventh Circuit explained further:

A qualitative reduction would be one like that proposed by General American's baseball analogy. In that example, the first shortstop was no longer able to perform one core and essential aspect of his job (throwing) as a result of an injury. This disability, while affecting only one of several core skills, would be enough to prevent him from continuing to perform as a shortstop. We agree with General American that a person purchasing disability insurance with the definition of totally disabled at issue here would reasonably expect that, if he was no longer able to perform an essential duty of this regular occupation, resulting in the loss of his position, he would be "totally disabled." See *Goldstein v. Lincoln Nat'l Life Ins. Co.*, 970 F. Supp. 598, 603 (E.D. Mich 1997) (reviewing *Turner v. Fidelity & Cas. Co.*, 112 Mich. 425, 70 N.W. 898, 899 (1897), which indicated that a barber who is deprived of use of his right hand, thereby rendering him unable to perform certain duties but still able to do others, would be totally disabled). This would be the case even if, in percentage terms, the disability affected an essential duty that comprised, for example, only 5% of the person's overall duties.

In contrast with an injury or sickness resulting in a qualitative performance reduction, a quantitative performance reduction would be one in which the injury or sickness would not physically prevent an employee from performing any given task, but the injury instead renders the person unable to perform enough of the tasks or to perform for a long enough period to continue working at his regular occupation. Therefore, although the person is still able to perform the actual tasks themselves, the person is reduced perhaps to 25% of the prior output. We think it possible that a reasonable interpretation of the policy language would indicate that a person whose quantitative performance was greatly reduced would also no longer be able to perform the "material and substantial duties of his occupation.

*McFarland* at 588.

On the whole, the focus of the case law is on how the claimant earned his "primary living" before his injury, *Ditommaso v. Union Cent. Life Ins. Co.*, 1991 WL 249977 at *1 9E.D. Pa. Nov. 25, 1991), *aff'd*, 972 F. 2d 1330 (3d Cir. 1992).

Stender argues that no genuine issue of fact remains as to the material and substantial duties he was engaged in at the time he became disabled and his inability to trade has been greatly reduced. It is undisputed that Stender was trading commodities from the pit at the time he became disabled and the duties required of him were to stand in the pit shouting buy and sell prices until a striking price was reached for a given commodity contract. It is also undisputed

that Stender was not engaged in computer trading off the floor at the time he became disabled.

Provident argues that an issue of fact exists as to whether Stender satisfies the requirements of total disability. Provident argues that a factual investigation must be conducted in order to determine the nature of what Stender's occupation was at the time of the alleged total disability. In support of its request for a factual investigation Provident argues that 1) Stender listed his occupation on his 1992 tax return to be that of Broker/Trader; 2) Stender admits that since 1992 he has been engaged in buying and selling commodities for his own account and that he currently has access to the floor of CMOE; 3) Stender concedes that he has traded the same commodities before and after the date of the alleged total disabilities; and 4) Stender concedes that he can have access to the same screens and information off the floor.

Provident's general argument is unclear because Provident does not raise it in terms of the policy definition but rather conclusorily argues that Stender is not totally disabled. As defined in the 334 policy totally disabled is (1) you are not able to perform the substantial and material duties of your occupation and (2) you are under the care and attendance of a physician. Provident does not tell the Court which substantial and material duties Stender can still perform. They claim Stender can still computer trade his own commodities but this argument fails to address the fact that Stender cannot trade on the floor using his voice or hearing–two essential aspects of how he engaged in trading.

As to Provident's specific arguments we conclude that none of these arguments raise an issue of fact. The fact that Stender listed his occupation in his 1992 income tax returns to be broker/trader is irrelevant. This is no way defines the substantial and material duties of his occupation at the time he incurred his injuries and became disabled. Nor do Stender's

concessions that he has subsequently traded his own commodities or has access to the screens and information on the trading floor raise an issue of fact as to Stender's inability to trade in the pit. These excerpts from Stender's Rule 12N(3)(b) statement actually support the fact that Stender can no longer work in the pit. It is irrelevant whether or not Stender is able to do the duties of an off the floor Positions Trader. Provident has not argued that Stender now has the "ability" to use the trading pits to buy and sell commodities, but rather argues that while Stender's voice and hearing limitations preclude Stender from trading in the pit they do not preclude him from trading off the floor. This argument, however, sidesteps the fact that the most substantial part of Stender's trading at the time he became disabled was shouting the buy and sell prices until a striking price was reached. Stender cannot trade in the pit without the ability to shout or hear. It is Provident's burden to show there is a genuine issue for trial. A genuine issue for trial only exists when there is sufficient evidence favoring the nonmovant for a jury to return a verdict for that party. *Flip Side Productions, Inc. v. Jam Productions*, 843 F. 2d 1024, 1032 (7th Cir. 1988). The Court is not to weigh the evidence but "'[if] the evidence is merely colorable, or is not significantly probative,' " summary judgment is appropriately granted. *Id.* at 1032 (citing *Anderdson v. Liberty Lobby*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). We do not believe the fact that Stender has access to the pit or trading screens could support a jury verdict that Stender could now engage in his regular occupation, *i.e,* perform the material and substantial duties of trading in the pit.

Moreover, although it is undisputed that both jobs fall under the broad occupational category of Commodities Future Trading the substantial and material duties involved in each job are different. Provident's own Occupational Analysis defines Pit Scalper to be "a speculator on

13

the trading floor who is focused on getting the edge/buying frequently and getting in and out of a trade very quickly (or "holding a position" for only a short period of time during the trading session) even if it means only 1 tick difference (a "tick" is the minimum price movement of a currency futures or options contract), obviously money is made on the volume of trades, and the same contract can be traded over and over again), a Scalper doesn't care which way the market is going if he can make a quick turn around..." A Position Trader is defined by Provident's Occupational Expert as "a trader who holds contracts for an extended period of time, the opposite of a "day trader" or "scalper," who normally initiates and offsets futures positions within a single trading session and ends the day "flat". While some of the duties Provident describes as part of being a Position Trader are inherent in the position of on the floor Pit Scalper it remains undisputed that the occupation of on the floor Pit Scalper clearly involves the ability to use one's voice and hear trades. Stender purchased this occupational disability policy in the event Stender could no longer use his voice or hear.

Nor is this conclusion changed by anything in the affidavit submitted by Provident's expert. Saliba's affidavit addressed the issue of occupation in the broad sense of the term, not the narrow one. We agree with Stender that it merely points out the similarities between two occupations (pit scalper and off-the floor trader) within the broad category of "commodities trader." This is like pointing out the similarities between two specialties (e.g. surgeon and gynecologist) within the broad category of "physician." Saliba also contends that "over the last four to five years the business of a commodity trader is taking place more and more in an off-the-floor environment as opposed to a pit trader environment." This is irrelevant. The above cited case law requires this Court to develop a clear understanding of the insured's occupation at the

time he became disabled. Once the job functions are defined, the Court must determine what functions the insured is unable to perform and the significance of that inability to the overall job function. While on the floor Stender was reaching strike prices and making a profit. Off the floor he is not shouting strike prices and is not making a profit. Provident's argument as to the trend in the trading industry to trade via computer is asking the court to redefine the material and substantial duties of Stender's occupation at the time he became disabled.

Moreover, in *Winter v. Minnesota Mutual Life Insurance Company*, 1998 WL 887091 (N.D. Ill. 1998) Judge Zagel recognized the difference between working in the pit and trading stocks by computer from a business office. *1. *Winter* was a stock option trader in the pit of the Chicago Board of Options Exchange at the time he applied for his disability policy. *Id.* Thereafter, in November, 1995, Mr. Winter started trading stocks by computer from a business office. After Mr. Winter gave up pit trading to trade on the computer, he became unable to use his voice. Judge Zagel recognized, computer trading did not require the use of his voice. *Id.* The Court held that Winter could not prevail because he was caught in a "timing lottery:" his disability did not arise until after he had stopped trading in the pit. The Court stated that "if Winter had endured the headaches and stomach pains for another thirteen to eighteen months and stayed in the pit, his present disability involving his throat and voice would have been diagnosed while he was unquestionably occupied as a trader in the CBOE pits. Minnesota Life would have to pay." *Id.* at *2.

Stender's loss of hearing and voice capacity prevent him from performing the most substantial functions of his job. The fact that Stender may be capable of earning a living by means of the continuance of his computer trading, which he is currently not doing, does not alter

15

that result. The policy in no way restricts Stender from pursuing other occupations.

It is further undisputed that a qualitative reduction in Stender's performance has occurred in that he can no longer hear well enough or project his voice sufficiently to work in the pit. Use of one's voice and the ability to hear is an essential aspect of trading in the pit. The significance of such loss renders him incapable of trading on the floor. A plain reading of the 334 policy provides that coverage is present if "substantial and material" duties cannot be performed. As stated in *McFarland* we analyze the policy language in a light from both a quantitative and qualitative perspective. A qualitative reduction has taken place in that Stender's disabilities have rendered him unable to shout and hear on the floor. A quantitative performance reduction has taken place in that Stender is unable to perform enough of the tasks to trade on the floor. Although the record suggests that he may be able to trade via the computer it is undisputed that he has not enjoyed the remuneration and physical abilities that he earlier enjoyed. Accordingly, Provident has failed to raise an issue of fact which support its contention that a factual investigation is warranted into Stender's occupation.

## IT IS UNDISPUTED THAT STENDER DID NOT HAVE A DUAL OCCUPATION

Provident's second argument contends that an issue of fact exists as to whether Stender had dual occupations at the time he became disabled from his pit scalping job. We find that no genuine issue of fact exists as to whether Stender had dual occupations at the time he became disabled. Provident's argument is essentially that Stender's involvement with Newco, Inc., a business formed by Stender, sometime in 1985, to put coin operated laundry machines in rental

buildings owned by his family, constitutes a dual occupation.

Stender claims that Newco is an "investment" he made to take advantage of his family's ownership of many apartment buildings. Stender did not do the work himself but rather contracted the operation of these services to Family Pride Laundries. Stender would then receive a commission from the use of the machines.

The fact that Stender has an ownership interest in Newco, and performed some duties for Newco, does not alter the fact that those activities were not the primary functions of Stender's occupation as a Pit Scalper. This conclusion is consistent with *Shapiro v. Berkshire Life Insurance Company*, 1999 WL 566372 (S.D.N.Y. 1999). There, the court found that because the plaintiff used his time primarily to perform the functions of a dentist who treats patients, the fact that he had an ownership interest in his and other dental practices and performed managerial and administrative duties for those practices did not amount to a dual occupation. The insurance policy purchased by Stender was intended to insure him against being unable to perform the duties of Pit Scalper, the most important of those being the physical aspects of shouting the buy or sell of the commodity. It cannot be concluded that Stender at the time of his disability was principally engaged in the management and operation of Newco. This business was, at most, an insubstantial part of his work and income.

Provident's reliance on *Dym v. Provident Life and Accident Insurance Company*, 19 F. Supp. 2d 1147 (S.D.Ca. 1998) is misplaced. The *Dym* Court reached its conclusion by relying on language in the residual disability portion of the insurance policy. Such an interpretation of the policy would be improper here because the policies at issue specifically prohibit using any language in the residual portion to interpret the total disability provisions. Indeed, the residual

provision specifically states: "Nothing in this provision limits the policy definition of "Total Disability." And, once again this argument is asking the Court to travel down the path of a general disability policy rather than an occupational policy.

## WAIVER AND PROMISSORY ESTOPPEL

Because the Court awards summary judgment to Stender on his claim for breach of contract, the Court need not reach the issue of whether Stender is entitled to the same relief under his claims for waiver and promissory estoppel.

## MOTION TO STRIKE

Provident's motion to strike portions of Stender's 12M statement pursuant to Federal Rule of Civil Procedure 56(e) is moot because the Court did not consider those portions of Stender's submissions in deciding Stender's summary judgment motion.

## CONCLUSION

Because there is no legitimate dispute that Stender is totally disabled relative to the duties he was regularly engaged in as a Pit Scalper, Stender's motion for summary judgment is granted and Provident's motion to strike is denied (#11-1) as moot.

**SO ORDERED**

ENTERED: June 28, 2000

HON. RONALD A. GUZMAN
**United States Judge**

18