# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1056 | **DATE** | 3/14/2001 |
| **CASE TITLE** | JOEL M. STENDER vs. PROVIDENT LIFE AND ACCIDENT INS. CO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Because no issue of material fact exists as to whether Stender's damages calculations are correct, Stender's motion for summary judgment with regard to damages and interest is hereby granted [24-1]. $319,600 is hereby awarded to Stender. (From the time the benefits stopped through 10/31/00) . Because Provident has sufficiently raised a material issue of fact as to whether it acted "vexatiously and unreasonably" in handling Stender's claim, Stender's motion for summary judgment with regard to Section 155 damages is denied. [24-1]. Finally, Provident's motion to strike Stender's statement of additional facts is hereby granted [33-1]. The parties are to appear for a status call to schedule filing of their pretrial order on 4/9/01 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 15 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 36 |
| | Mail AO 450 form. | | cm docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| JOEL M. STENDER | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 98 C 1056<br>) |
| PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY | ) Judge Ronald A. Guzman<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Joel M. Stender's motion for final summary judgment pursuant to Fed.R.Civ.Proc.56. Also pending is Defendant's motion to strike Stender's statement of additional facts filed pursuant to Local Rule 56.1. (#24-1). For the reasons set forth below, Plaintiff's motion for summary judgment is granted in part and denied in part. Defendant's motion to strike is hereby granted (#33-1).

## BACKGROUND FACTS

The facts of this case were previously discussed in this Court's Memorandum Opinion of June 28, 2000. A brief recapitulation of this facts is follows. Provident Life and Accident Insurance Company ("Provident") issued plaintiff Joel M. Stender ("Stender") an occupational disability insurance policy in June of 1980.[1] Stender applied for an additional policy on October 14, 1982, and the policy was issued on January 14, 1983.[2] On March 14, 1983, Stender wrote

---

[1] This insurance policy, issued in June of 1980, is Policy No. 6PC-425809 ("the 330 policy").
[2] This insurance policy, issued on January 14, 1983, is Policy No. 6-344-546778 ("the 334 policy").

1

Provident a letter describing his understanding of the terms of the policy in an effort to confirm that the policy he was purchasing would cover him if he should ever become unable to trade on the floor. In the letter he stated that his occupation was that of a Commodities Pit Scalper, and that scalping entails standing in the trading pit and buying and selling commodities for his own account. Stender further stated it was his understanding that if his hearing or voice deteriorated, for any medical reason, to the point where a physician advised him to discontinue Pit Scalping, he would be entitled to full benefits under the polices. Stender further went on to state that if he were to become disabled, he would still trade, albeit outside of the pit. This, he informed Provident, is "entirely different from what I do for the purpose of the disability insurance," and must therefore be considered a different occupation. Stender made the attachment of this letter to his policy a precondition to Provident accepting his premium check.

Provident responded to Stender in two separate letters. In its first letter, dated April 15, 1983, Provident informed Stender that "[i]n the event of suffering total loss of speech, hearing, sight or use of two limbs, regardless of your ability to engage in any occupation, you will be paid your monthly benefits for lifetime. In the event of a residual disability, where you are unable to perform one or more of your usual important business duties, or cannot devote as much time as normal, and suffer an earnings loss of 25% or more, we would pay a proportionate benefit. This applies only if you return to your normal occupation." In its second letter, dated June 10, 1983, Provident acknowledged Stender's statement that his occupation was that of a Commodity Scalper, but noted that "the policy does not dictate how you must perform the duties of your occupation." Provident informed Stender that in determining disability, the relevant issue would be whether or not his is able to perform the duties of his occupation. Provident informed Stender that although the letter would be kept in his file, the letter did not have any effect on the disability policy.

The terms of these policies were amended several times after issuance, and as of 1993, the terms entitled Stender to a total of $9,400 per month for a minimum of ten (10) years in the event that he should become totally disabled as defined in the terms of the policies. The terms of the policies also provided that, should Stender become totally disabled, his premium payments would be waived during the time Provident would pay his total disability benefits.

Several years after obtaining these policies, Stender became totally disabled in that he could no longer hear or speak sufficiently to work as a Commodities Pit Scalper, and has since been under the care of a physician. In July of 1993, Stender filed a claim for total disability with Provident under both policies, and payment of benefits by Provident commenced soon thereafter. By December of 1993, Stender informed Provident that he was in the process of learning how to be an off the floor trader. In January of 1994, a Provident Field Agent named Warren Diegel met with Stender to discuss Stender's off the floor trading. This was followed up by another interview in June of 1995. Stender's claim file was assigned to Clayton Smith, another Provident adjuster in 1995.

Provident looked to a number of sources in evaluating Stender's disability claim and his occupation status. The sources considered include, (1) Stender's original applications for insurance coverage; (2) his description of his job duties on his statement of claim, the answers he provided on his job duty questionnaire; (3) the information determined by Provident's field claim representative through personal interviews with Stender; (4) information obtained during telephone conversations with Stender; and (5) research related to Stender's trading occupation.

Clayton Smith concluded that Stender was not entitled to total disability benefits. As a result, Provident proposed a change in Stender's status from totally disabled to residually disabled on June 22, 1995. After corresponding with Stender's attorney regarding the change in status and reviewing the materials he provided, Provident resumed handling Stender's claim as a total

3

disability claim. Provident had determined that placing Stender in a residual status "may have been a little premature" at that time. Provident thereafter continued to investigate Stender's total disability claim. In the meantime, Provident contacted Stender twice with regard to submissions of his physician's statements and claims forms. On November 2, 1995, Provident informed Stender by letter that he no longer needed to submit his physician's statements on a monthly basis, and that quarterly submissions would be sufficient. Then on January 22, 1996, Provident informed Stender that as a convenience to him, he only needed to submit his claims forms on a semi-annual basis in order to receive his benefits.

As a final part of its investigation, Provident consulted Pembroke Consultants in June of 1997 to provide a vocational analysis related to Stender's occupation. Then in November of 1997, four years after payment of benefits had commenced, Provident notified Stender that it would discontinue his total disability benefit payments. At the same time, Provident informed Stender that he may be eligible for residual disability benefits, and invited him to contact them if he had any questions. Provident additionally provided Stender with two additional total disability payments to "facilitate" his transition. While acknowledging that there was no change in Stender's physical condition, Provident claimed that he no longer met the requirements for total disability, contending that he was still involved in the same occupation as he had been prior to becoming disabled. Payments officially stopped as of January of 1998.

Stender calculates that benefits have accrued in the amount of $319,6000 from the time Provident stopped paying through October 31, 2000. Stender also calculates that 5 percent of the delinquent premiums totals $23,288.09 (for purposes of calculating pre-judgment interest, if awarded). In addition, it is undisputed that Stender resumed making premium payments, based on Provident's contention that he was no longer totally disabled, in order to maintain his coverage. He has been doing so since the beginning of 1998. Premium payments of $394.38 are

made on one policy on a quarterly basis (in March, June, September, and December), and payments of $926.58 are made biannually on the other policy (in January and July). Stender calculates that he has paid $8,576.70 in premiums, with another $394.38 becoming due in September.[3] Stender calculates that 5 percent of this is $609.85 through October 31, 2000 (for purposes of calculating pre-judgment interest, if awarded).

On June 28, 2000, this Court granted plaintiff's motion for partial summary judgment on the issue of Provident's liability for breach of contract. In doing so, this Court held that Provident wrongfully revoked Stender's total disability benefits under the insurance policies. This Court furthermore noted that Provident's defenses had, among other things, been "conclusory," "irrelevant," and "misplaced." Stender now seeks summary judgment as to the remaining issues of: (1) damages; (2) interest; and (3) Section 155 liability.

## DISCUSSION

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, Rule 56(c) requires the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986).

A party may not rest upon pleadings to oppose a motion for summary judgment and must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). In reviewing motions for

---

[3] Presumably, Stender has made premium payments in Septmeber, December and January.

summary judgment, courts must view the evidence in the light most favorable to the non-moving party. *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987). As summary judgment is a drastic and extraordinary remedy, it must be granted only where the "movant's right to judgment as a matter of law is absolutely clear and free from doubt. *Green v. International Ins. Co.*, 238 Ill.App.3d 929, 605 N.E.2d 1125 (2nd Dist. 1992).

Stender first moves for summary judgment on the issue of damages. Stender contends that he is entitled to the benefits that have accrued from the time Provident stopped paying, as well as for reimbursement for the premiums he has paid since the time his benefits were revoked. In addition, Stender seeks pre-judgment interest. Finally, Stender seeks summary judgment on the issue of Section 155 damages, contending that no issue of fact exists to preclude a finding that Provident's conduct in denying his claim was "vexatious and unreasonable" as a matter of law.

In opposing Stender's motion for summary judgment with regard to damages, Provident disputes Stender's calculation of accrued benefits, and disputes Stender's inclusion of premium payments. Provident contends that Stender was never required to make these payments. With regard to interest, Provident argues that the circumstances of this case do not justify an award. Finally, with regard to Section 155 liability, Provident argues that the facts it set forth raise a genuine issue of material fact as to whether Provident's conduct in denying Stender's claim was "vexatious and unreasonable."

## NO ISSUE OF MATERIAL FACT REMAINS AS TO THE AMOUNT OF DAMAGES TO BE AWARDED TO STENDER

This Court has already determined that Stender is entitled to total disability benefits on the policies issued by Provident. Based upon this finding, Stender calculated the benefits that

have accrued since the time Provident stopped paying. He contends that the disability benefits have accrued in the amount of $319,600 from the time benefits stopped, through October 31, 2000. Provident denies that this amount is owed by Provident but fails to cite to any disputed fact(s) in the record to support its denial. This blanket denial on Provident's part is clearly insufficient to raise an issue of material fact per the requirement of Local Rule 56.1, and damages in the amount of $319,600 are hereby awarded.

Stender also included premium payments in the amount of $8,576 in his calculation of damages. Stender claims that he is entitled to reimbursement of this money, as he resumed making premium payments in order to maintain coverage after his benefits had wrongfully been revoked. Provident disputes Stender's contention that he was required to resume making premium payments. According to Provident, Stender was not required to make these payments. Provident fails to cite to any fact in the record to support its denial that Stender was required to resume premium payment once Provident decided he was no longer disabled. It is undisputed, however, that to keep this policy alive, Stender was in fact required to resume premium payments. Because this fact stands unrebutted we conclude that these premium payments are in fact damages Stender incurred.

## PRE-JUDGMENT INTEREST

Stender further argues that he is entitled to $23,897 in interest through October 31, 2000[4] Stender contends that Plaintiff-Insureds are entitled to pre-judgment interest when they prevail on an insurance coverage issue, even where the insurer has acted in good faith. Provident, on the other hand, argues that this Court should decline to award interest based on the facts and circumstances of this case.

---

[4] He also includes a per diem calculation for the time period after October 31, 2000.

7

The applicable statute, 815 ILCS 205/2, provides: [c]reditors shall be allowed to receive at the rate of five (5) percent per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing . . . and on money withheld by unreasonable and vexatious delay of payment. This statute gives trial courts broad discretion over whether or not to award pre-judgment interest. *Bank of Chicago v. Park Nat. Bank*, 277 Ill.App.3d 167, 660 N.E.2d 19 (1st Dist. 1995), rehearing denied, appeal denied, 167 Ill.2d 549, 667 N.E.2d 1055 (1996). Illinois courts have held that insureds are entitled to pre-judgment interest under this statute in instances where the insurer's conduct in handling the insured's claim was vexatious and unreasonable. *See, e.g., Boyd v. United Farm Mut. Reinsurance Co.*, 231 Ill.App.3d 992, 596 N.E.2d 1344 (5th Dist. 1992), appeal denied, 147 Ill.2d 625, 606 N.E.2d 1224 (1992). Because this Court has not concluded that Provident's conduct was "vexatious and unreasonable," interest cannot be granted on this ground. But, the existence of a good faith defense does not preclude recovery of pre-judgment interest. *Ervin v. Sears, Roebuck and Co.*, 127 Ill.App.3d 982, 469 N.E.2d 243 (5th Dist. 1984). The statute alternatively provides for recovery of pre-judgment interest for monies becoming due on instruments of writing, so long as the amount due is readily ascertainable. *Conway v. Country Cas. Ins. Co.*, 97 Ill.App.3d 768, 423 N.E.2d 559 (3rd Dist. 1981), affirmed in part, reversed in part, 92 Ill.2d 388, 442 N.E.2d 245 (1982). Illinois courts have held that insurance contracts constitute instruments of writing within the meaning of this statute. *Liberty Mut. Ins. Co. v. Westfield Ins. Co.*, 301 Ill.App.3d 49, 703 N.E.2d 439 (1st Dist. 1998). This Court's previous ruling established that Stender is owed money on an instrument in writing (the Provident policies). It has also been established that the amount due Stender is readily ascertainable. Therefore, an award of pre-judgment interest is appropriate as a matter of law.

## AN ISSUE OF FACT REMAINS AS TO WHETHER PROVIDENT'S DENIAL OF BENEFITS WAS

## VEXATIOUS OR UNREASONABLE

Stender further seeks summary judgment in his favor as to the issue of Provident's Section 155 liability. Section 155 (215 ILCS 5/155) provides:

> [i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious or unreasonable, the court may award as part of the taxable costs in the action reasonable attorneys fees, other costs, plus an amount not to exceed any one of the following amounts: (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs; (b) $25,000; (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of all costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

Stender argues that Provident's conduct was "vexatious and unreasonable" in that while agreeing that he could not perform his job, Provident denied his claim without providing colorable justification for doing so. Stender points to the fact that this Court dismissed Provident's arguments as, among other things, "irrelevant," "unclear," and "misplaced." Stender also points to the fact that this Court noted that Provident's arguments failed to address the relevant policy definition at issue, and that its arguments were contradictory to its own "Occupational Analysis." Ultimately, Stender argues that because Provident's arguments did not "draw the thoughtful consideration of the court," and because its arguments ignored the relevant language in its insurance policies and were contradictory to its expert analysis, Section 155 damages should be awarded. In opposition, Provident argues that even if this claim could appropriately be resolved through summary judgment,[5] the facts of this case taken in the totality

---

[5] Provident questions whether summary judgment is an appropriate method of determining Section 155 liability, noting a comment articulated by this Court at the July 26, 2000 status hearing. This Court commented that a Section 155 claim in this case cannot likely be resolved through summary judgment given that the nature of Section 155 claims involve fact questions and/or credibility issues that should be resolved at an evidentiary hearing.

of the circumstances indicate that Provident's conduct in denying Stender's claim for benefits was not "vexatious and unreasonable."

A determination of whether an insurer's conduct in denying a claim was "vexatious and unreasonable" is a question of fact and falls within the discretion of the trial court. *Bedoya v. Illinois Founders Ins. Co.*, 293 Ill.App.3d 668, 688 N.E.2d 757(1st Dist. 1997), rehearing denied, appeal denied, 177 Ill.2d 567, 698 N.E.2d 542 (1998). Here, Stender argues that we should award Section 155 damages based primarily upon the fact that this court found Provident's arguments in support its denial of Stender's claim to be unacceptable. We find that to determinate this alone is insufficient to support a claim for Section 155 damages. The relevant case law clearly prohibits an award of damages against an insurer merely for raising unsuccessful arguments in the underlying litigation. For instance, a number of Illinois courts have held that a finding that an insurer wrongfully denied coverage is not enough by itself to warrant an award of attorney fees to the prevailing insured. *Bernstein v. Genesis Ins. Co.*, 90 F.Supp.2d 932 (N.D. Ill. 2000); *Matsushita Elec. Corp. of America v. Home Indem. Co.*, 907 F.Supp. 1193 (N.D. Ill. 1995). In addition, the Seventh Circuit recently held that attorney fees cannot be awarded against an insurer solely on the basis that the insurer's position in litigation was unsuccessful. *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). And yet another court held that an insurer will not be deemed to have acted vexatiously and unreasonably because it denied a claim on grounds that were later held to be either erroneous or unacceptable. *See Automotive Wholesalers of Illinois v. National Union Fire Ins. Co. of Pittsburgh*, 501 F.Supp. 1205 (N.D. Ill. 1980). The Seventh Circuit summed it up by saying that an award of attorney fees is only appropriate where the evidence indicates that the insurer's behavior in denying a claim was willful and without reasonable cause. *Citizens*, 200 F.3d at 1110.

Stender directs this Court to the letter he sent to Provident to confirm the scope of his coverage. He contends that Provident never informed him that he would not be covered under the circumstances it knew he had purchased the policies to protect him against. Stender urges this Court to consider this in its determination of whether to award Section 155 damages. While this will be one of the factors under the Court's consideration, it is well-established under Illinois law that a court must consider the totality of the circumstances in determining whether to award these damages. *Bernstein v. Genesis Ins. Co.*, 90 F.Supp.2d 932 (N.D. Ill. 2000); *Peterson v. Colquhoun*, No. 96-C-3316, 1997 WL 610061, at *3 (N.D. Ill. Sept. 26, 1997); *Maduff v. Life Ins. Co. of Virginia*, 657 F.Supp. 437 (N.D. Ill. 1987). According to the court in *Stowe v. Security Life Ins. Co. of America*, No. 94-C-6992, 1996 WL 84196, at *2 (N.D. Ill. Feb. 22, 1996), this means that no one factor can be dispositive. While this is so, a number of Illinois courts have held that the insurer's attitude is one of the factors that must be considered. *See, e.g., Green v. International Ins. Co.*, 238 Ill.App.3d 929, 605 N.E.2d 1125 (2nd Dist. 1992). According to the court in *Emerson v. American Bankers Ins. Co. of Florida*, 223 Ill.App.3d 929, 585 N.E.2d 1315 (5th Dist. 1992), whether an insurer has acted "vexatiously and unreasonably" in denying an insured's claim also depends, in large part, upon the circumstances of the case, particularly its conduct in denying the claim and its reasons for nonpayment.

The facts and arguments set forth by Stender in support of this motion have been considered by this Court. But given that the Court must look to the totality of the circumstances, and that some of the factors under the Court's consideration must include Provident's attitude and its overall conduct in denying the claim, we cannot find that Provident's conduct was "vexatious and unreasonable" as a matter of law. This is because these damages are requested on a motion for summary judgment, meaning that the evidence must be looked at in the light most favorable to Provident. Provident met its burden in that a number of facts it set forth, when viewed in the

light most favorable to Provident, raise a genuine issue of material of fact as to whether its conduct was "vexatious and unreasonable" in the totality of the circumstances.

For instance, Provident pointed to numerous sources that it considered and reviewed relating both to Stender's medical condition and his occupation before concluding that his total benefits should be terminated. Furthermore, Provident pointed to the fact that even after its original determination that Stender was no longer totally disabled, Provident returned Stender to totally disability status after engaging in communications with his attorney. Provident acknowledged at that time that the change in status had probably been premature. Provident, thereafter, paid Stender full benefits during the time it continued its investigation of his claim. In the meantime, Provident made it far more convenient for Stender to collect his benefits, in that the number of times per year that he was required to submit medical reports and claims forms were reduced. Provident further pointed to the fact that even after it made its final determination that Stender was no longer entitled to total disability benefits, Provident paid Stender two additional payments in order to "facilitate" his transition. Finally, Provident informed Stender at this time that he may be entitled to residual disability benefits under the terms of the policies, and invited him to contact them with any questions.

This Court is cognizant that the record contains many facts which would weigh in on the side that Provident's conduct was "vexatious and unreasonable." However, a number of the facts set forth by Provident, when viewed in the light most favorable to Provident, are sufficient to raise an issue of material fact as to whether it acted vexatiously and unreasonably in the totality of the circumstances. So, while the facts presented by Provident may not ultimately discharge it of liability under Section 155, they do preclude a finding of liability for these damages as a matter of law.

## MOTION TO STRIKE

Provident's motion to strike Stender's statement of additional facts is granted, as discussions between the respective counsels for the parties regarding potential residual disability benefits, beginning after the commencement of litigation, are irrelevant to the Court's consideration and analysis of the facts surrounding Provident's pre-suit denial of Stender's benefits.

## CONCLUSION

Because no issue of material fact exists as to whether Stender's damages calculations are correct, Stender's motion for summary judgment with regard to damages and interest is hereby granted (#24-1). $319,600 is hereby awarded to Stender. (From the time the benefits stopped through October 31, 2000) Because Provident has sufficiently raised a material issue of fact as to whether it acted "vexatiously and unreasonably" in handling Stender's claim, Stender's motion for summary judgment with regard to Section 155 damages is denied (#24-1). Finally, Provident's motion to strike Stender's statement of additional facts is hereby granted (#33-1). The parties are to appear for a status call to schedule filing of their pretrial order on April 9, 2001.

**SO ORDERED**

ENTERED: 3/14/01

HON. RONALD A. GUZMAN
United States Judge